CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. HUMPHREYS.

Opinion delivered March 10, 1913.

1.  LIMITATION OF ACTIONS—OBSTRUCTION OF DRAINAGE.—When a railway company constructs a culvert so that damage to adjoining property by overflow must necessarily result, and the certainty, nature and extent of the damage may be reasonably ascertained and estimated at the time of the construction of the culvert, then the damage is original and there can be but a single recovery and the

statute of limitations against such cause of action is set in motion on the completion of the obstructing culvert. (Page 335.)

2. LIMITATION OF ACTIONS—OBSTRUCTION OF DRAINAGE.—If damage to adjoining property by overflow by reason of the construction of a culvert by a railroad company, is merely probable, or the nature and extent of it can not be known and fairly estimated, and would be only speculative and conjectural, the statute of limitations is not set in motion until the injury occurs, and there may be as many successive recoveries as there are injuries. (Page 336.)

3. LIMITATION OF ACTIONS—RAILROADS—DAMAGE TO LAND BY OVERFLOW—WHO MAY RECOVER.—When a railroad company, by the construction of a culvert causes a permanent injury to land by causing it to overflow, the injury was caused at the time the culvert was constructed, and if the right of the owner against the railroad for damages, is barred by limitations, the right of a tenant of the owner is also barred. (Page 336.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed and dismissed.

### STATEMENT OF FACTS.

On the 22nd day of February, 1912, appellees, Ella Humphreys and her husband, James Humphreys, instituted separate actions in the Saline Circuit Court against the appellant railway company for damages alleged to have resulted from exposure of appellee, Ella Humphreys, to an overflow of water from Rose Creek in the western part of the city of Little Rock. The wife alleged that as a result of her exposure, she caught a cold which terminated in inflammation of the bladder, technically called cystitis, and the husband's suit was for the loss of his wife's services and for the expense of her treatment. The cases were consolidated and from a judgment in favor of each plaintiff, this appeal was taken. The complaint in each case alleged that on or about March 20, 1909, Mrs. Humphreys resided in a dwelling house at 401 Summit avenue in the city of Little Rock, the same being the property of R. D. and B. T. Plunkett, and that there was a natural water course, commonly called Rose creek, which ran across the lots on which said house was situated. That in 1899 the appellant built its railroad across said creek near said house and built a culvert over said creek which left

an opening for the flow of water of about eight feet by thirteen. That said house was never overflowed prior to the construction of said culvert, but has frequently overflowed since. That after the house had overflowed, Plunkett built a stone wall six or seven feet high along the bank of the creek opposite the brick house, and had the floor in the house raised. That in 1908 appellees negotiated for renting the house and were informed that it had overflowed, but since the stone wall had been erected and the floor raised, that the house was now protected from further danger of overflow. They rented the house and moved into it in February, 1908, and there was no overflow in the house until March, 1909, at which time the water came in the house at about 3 o'clock in the morning to a depth of twenty-two inches. That appellee, Ella Humphreys, in attempting to save her property and in ministering to her children was exposed to the water and contracted the cold, from which the injuries resulted for which she sues. It was further alleged in the complaint that the appellant had negligently constructed the culvert by not making it large enough for the natural flow of the water down the creek and that as a result, the water backed over the land and into the house as above stated. Appellant answered and denied the injury and the insufficiency of the opening and alleged that the culvert was sufficient to carry all water that passed down the channel of said creek. But alleged that any cause of action which might have arisen out of the negligent failure to leave a sufficient opening was barred by the three years statute of limitations and also set up appellees' contributory negligence as a defense.

The evidence is undisputed that the culvert was insufficient from the time of its construction.

The plaintiff admitted that he knew that the land had overflowed but did not know to what depth, but he stated that he supposed the stone wall built around the premises and the filling in that had been done would afford protection. Appellees had previously lived in

Lonoke county and were personally unacquainted with the conditions surrounding this house. But the proof on the part of appellant was that appellees were fully advised as to conditions, and the agent of the owner explained that the rent was low because the house overflowed. The owner of the property testified on behalf of appellees and stated that it overflowed into the house the first big rain after appellant's road was built and that every big rain after that would overflow the premises about like it did when appellee lived there. That everybody in the neighborhood knew the water came up in the house and there were water marks on the outside and one on the inside of the house which showed where the water had come, and the proof of these facts is undisputed. He stated also that he had been compelled to reduce his rent on account of these overflows and that an additional reduction had been made necessary by the experience which appellees had had in the house. A civil engineer testified on behalf of appellees that the construction of this culvert across this creek was a very stupid piece of work and that its insufficiency was apparent from the first. The railroad undertook to show that the culvert would admit the passage of all the water that would flow down the channel of the creek, but the proof is undisputed that when the big rains came the channel itself was insufficient to carry the water and the overflows regularly occurred. If it appears that either party has changed his theory about the case, it is still true that the above facts are undisputed. The appellant asked and the court refused to give the following instructions:

"A. You are instructed that under the law and testimony in this case neither of the plaintiffs is entitled to recover in this case, and you will therefore find for the defendant."

"K. You are instructed that one of the issues in this case is the statute of limitations, and although you may find from the testimony that the culvert constructed by the defendant was not sufficient in capacity to permit

the passage of water and prevent the plaintiff's exposure, as alleged in the complaint, nevertheless, your verdict must be for the defendant, unless you find that said culvert was constructed within three years next before the institution of her original action against the defendant."

"L.   If you find from the testimony that at the time of the construction of the defendant's culvert in 1899 or about one year thereafter, it became apparent that the opening provided was not sufficient to permit the passage of water and prevent an overflow of the premises occupied by the plaintiffs and that the condition of said culvert continued from that time until the injury complained of in February or March, 1909, a period of more than three years after the insufficiency in the culvert became apparent, you will find for the defendant."

This refusal was assigned as error and these instructions are sufficient to raise the question of limitations which arises under the evidence in this case.

*Thos. S. Buzbee* and *John T. Hicks,* for appellant.

1.   The injury done by the construction of the culvert in 1899 was a permanent injury to the land and not to the person of the plaintiff, Ella Humphreys, who subsequently became a tenant of the premises; and as the plaintiffs did not own the land and had no interest therein at the time the injury was inflicted, no cause of action ever arose in their favor.   92 Ark. 406, 413.

2.   Any cause of action that ever existed is barred. Where the obstruction is permanent and necessarily an injury, the damage is original, and the statute begins to run from the placing of the obstruction.   *Supra;* 35 Ark. 622; 39 Ark. 463; 52 Ark. 240, Syl. 1; 56 Ark. 612; 62 Ark. 364; 72 Ark. 127; 76 Ark. 542; 80 Ark. 235; 82 Ark. 387; 86 Ark. 406; 92 Ark. 465; 93 Ark. 46.

*Manning & Emerson* and *I. S. Humbert,* for appellees.

Appellees had a cause of action and the same was not barred.   The law imposed upon the appellant the duty of leaving sufficient opening under its road bed to

permit the water to pass through. Having failed to perform that duty, and appellees being thereby damaged, they had a cause of action. Kirby's Dig. § 2991. Where the obstruction complained of is not entire and complete, and an opening is left for the passage of water, as in this case, the damage is not original, but a continuing one, each overflow constitutes a ground for a new action, and the statute of limitation begins to run from the time of the overflow which inflicted the damage. 52 Ark. 240; 56 Ark. 613; 72 Ark. 127; 76 Ark. 545; 78 Ark. 589; 85 Ark. 111; 80 Ark. 235; 82 Ark. 387; 3 Farnham on Water and Water Rights, 2647, 2648; 95 Ark. 297; 57 Ark. 387, 398.

SMITH, J. Without question this culvert was a permanent structure and, equally without question, it became apparent that these lots were made to overflow by the construction of it as a part of appellant's road. But upon consideration of the question as to the application of the statute of limitations to these overflow cases, the permanency of the structure or obstruction impeding the flow of water is not the controlling question. Indeed, the question can not arise unless the obstruction is of a permanent nature, but its permanency does not of itself determine whether the damages, which result from its erection, are original or recurring. If it is of such a construction as that damage must necessarily result, and the certainty, nature and the extent of this damage may be reasonably ascertained and estimated at the time of its construction; then the damage is original and there can be but a single recovery and the statute of limitation against such cause of action is set in motion on the completion of the obstruction. If it is known merely that damage is probable, or, that even though some damage is certain, the nature and the extent of that damage can not be reasonably known and fairly estimated, but would be only speculative and conjectural; then the statute of limitation is not set in motion until the injury occurs, and there may be as many successive recoveries as there are injuries. There are many cases

in our reports on this subject and their difficulty consists in the application of the law to the facts of each case. *McAlister* v. *St. L., I. M. & S. Ry. Co.*, 107 Ark. 65; *St. L., I. M. & S. Ry. Co.* v. *Mackey*, 95 Ark. 297; *Kelley* v. *K. C. So. Ry. Co.*, 92 Ark. 465; *Levee District* v. *Barton*, 92 Ark. 406; *St. L., I. M. & S. Ry. Co.* v. *Magness*, 93 Ark. 46; *C., R. I. & P. Ry. Co.* v. *McCutchen*, 80 Ark. 235; *St. L., I. M. & S. Ry. Co.* v. *Hoshall*, 82 Ark. 387; *Turner* v. *Overton*, 86 Ark. 406; *St. L. S. W. Ry. Co.* v. *Morris*, 76 Ark. 542; *St. L., I. M. & S. Ry. Co* v. *Stephens*, 72 Ark. 127; *St. L., I. M. & S. Ry. Co.* v. *Anderson*, 62 Ark. 360; *St. L., I. M. & S. Ry. Co.* v. *Biggs*, 52 Ark. 240; *Ry. Co.* v. *Yarbrough*, 56 Ark. 612; *Ry. Co.* v. *Cook*, 57 Ark. 387; *Bentonville Ry.* v. *Baker*, 45 Ark. 252; *Springfield & Memphis Ry.* v. *Henry*, 44 Ark. 360; *Springfield & Memphis Ry.* v. *Rhea*, 44 Ark. 258; *L. R. & F. S. Ry. Co.* v. *Chapman*, 39 Ark. 463; *St. L., I. M. & S. Ry. Co.* v. *Morris*, 35 Ark. 622.

Under the facts here stated there is no such difficulty in this case. It was known after the first rain that the culvert was insufficient and would cause the land to overflow, the depth of this overflow was indicated by the high water marks and was observed by the residents of that locality. These considerations determined the value of the land and the difference in this value before and after the construction of the culvert measured the damages which the land owner should recover.

If the owner of the land was barred, the appellees as tenants were. This feature of the case is very similar to the case of *Board of Directors, St. Francis Levee District* v. *Barton*, 92 Ark. 406. In that case Barton was a tenant in possession of the land which was overflowed, under a lease for a term of years, including the years 1906 and 1907, when the crops were destroyed by the impounded water. The levee which impounded the water and caused the overflow was constructed in 1899 and in holding that that cause of action was barred, the court there said: "It would perhaps be more accurate, instead of saying that plaintiff's cause of action was barred, to say that

the injury done by the construction of the levee in 1899 was a permanent injury to the land, and not to the crops subsequently planted and grown thereon; and, as the plaintiffs did not own the land, and had no interest therein at the time, the injury was inflicted, no cause of action ever arose in their favor."

So here the railroad was built in 1899 and appellees had no interest in the land damaged at the time the injury was inflicted and consequently they never had a cause of action on account of this obstruction. The judgment is accordingly reversed and the cause dismissed.